On the evening of January 21, 1947, plaintiff, Thomas J. Rourke, was a passenger on a bus owned and operated by the defendant, Public Service Coordinated Transport, en route from Elizabeth to Perth Amboy. The plaintiff's destination was the Barber Asphalt Corporation, a stop commonly known as Barber. He had never previously been to Barber and asked to be let off there. Inadvertently he was carried past his destination and when he discovered that fact and advised the driver, the latter stopped the bus and plaintiff crossed the street and boarded another Public Service bus going in the opposite, or northerly, direction, and told the operator of the second bus that he had been driven past his destination. The operator of the latter bus said that he would let him out at Barber. Once again he was carried past his destination and when the second bus driver learned of it, he said: "I will stop a bus coming down the other way and tell him to let you off there." The next south-bound bus stopped on signal from the north-bound bus and the two stopped approximately opposite each other. After some conversation between the operators, the driver of the bus in which the plaintiff was riding told him to descend, go around the front of the bus and get on the south-bound bus. As plaintiff walked around the front of the north-bound bus, he looked to his right, or to the north, and saw no traffic approaching. *Page 46 
He then looked to the south and could see about 100 feet. After taking several steps to cross the street, he made a further observation at a point where he could see from 300 to 400 feet and observed, for the first time, an automobile about 150 feet away, going about 35 or 40 miles per hour. He was then some four or five feet from the left side of the bus from which he had descended. He took a step or two backward, was struck by the approaching car and seriously injured. The accident happened at a point where the plaintiff's view may have been somewhat obstructed to the south by a curve in the road. Hence it was not until he had taken a few steps into the street and beyond the north-bound bus that his view lengthened from 100 to 400 feet.
The duty of a common carrier to a passenger had been stated inHiggins v. Del Monte and Public Service Coordinated Transport,119 N.J.L. 3 (E. A. 1937), as follows: "The duty of a carrier to exercise due care for the safety of a passenger continues only while the relation of passenger and carrier exists. When a passenger on a street car has safely alighted therefrom upon a public highway, provided the place is a reasonably safe and proper one for that purpose, this relation ceases, and with it the duty."
In the instant case it was for the jury to determine whether or not the plaintiff was still a passenger in view of the fact that he had twice been carried past his destination and that the driver of the second bus was endeavoring to arrange for the completion of the passenger's journey. In light of the admitted fact that the plaintiff had, through no fault of his own, been twice carried past his destination, we are of the opinion that the relationship of carrier and passenger continued while the errors were in process of being rectified and that it was incumbent upon the defendant to exercise a high degree of care for the plaintiff's safety, which included the duty to select a place to stop that was reasonably safe and proper under the circumstances. Whether the defendant met that duty in view of the fact that it was dark, that plaintiff was unfamiliar with the locale and that the road was curved in the direction from which came the car *Page 47 
which struck him, all made a situation calling for a finding of fact by the jury. Hence the court properly left that question to it.
We have examined the charge of the court and we find no error prejudicial or otherwise to the defendant.
The judgment is affirmed.